UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RONNIE MILLS, as Executor of the Estate
of Cintoway Mills, Deceased,
    Plaintiff,

     v.                          CIVIL ACTION NO.
                                     15-13267-MLW

CHARLES TURNER,
    Defendant.

**REPORT AND RECOMMENDATION RE:**
**PLAINTIFF RONNIE MILLS' MOTION FOR SUMMARY JUDGMENT (DOCKET**
**ENTRY # 20); DEFENDANT CHARLES TURNER'S MOTION FOR SUMMARY**
**JUDGMENT (DOCKET ENTRY # 21)**

**July 10, 2017**

**BOWLER, U.S.M.J.**

Pending before this court are cross-motions for summary judgment filed by the parties, plaintiff Ronnie Mills ("plaintiff"), as executor of the estate of Cintoway Mills ("Mills"), and defendant Charles Turner ("defendant"). In seeking summary judgment, plaintiff maintains that defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"). (Docket Entry # 20). Defendant moves for summary judgment and a dismissal of the amended complaint. (Docket Entry # 21).

<u>PROCEDURAL BACKGROUND</u>

On November 29, 2016, plaintiff filed the amended complaint ("the complaint") alleging that defendant violated the FDCPA.

(Docket Entry # 16).  The three-count amended complaint sets out the following causes of action against defendant:  (1) failure to send a debt validation notice ("validation notice") in violation of 15 U.S.C. § 1692g ("section 1692g") (Count One); (2) misrepresentation in connection with the collection of a debt in violation of 15 U.S.C. § 1692e ("section 1692e") (Count Two); and (3) unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f ("section 1692f") (Count Three).  Plaintiff seeks both statutory damages and attorney's fees.  On January 11, 2017, defendant filed an answer admitting to certain facts[1] and denying others. (Docket Entry # 17).  The answer also includes the following "Separate Defenses":

> 1. That any injury sustained by Plaintiff was a result of activities that were not under the control of the Defendant.
> 2. Plaintiff's Attorney has failed to join necessary parties to this action.
> 3. Plaintiff's suit against the Defendant should be dismissed for failure to prove actual injury pursuant to Spokes Inc. vs. Robins 578 U.S. ___(2016).[2]

(Docket Entry # 17, p. 3).

On February 1, 2017, plaintiff filed his motion for summary judgment based on the violations of the FDCPA and contested all

---

[1]  The admitted facts therefore comprise part of the summary judgment record.

[2]  This court assumes that defendant intended to cite Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1556 (2016), which he attaches as an exhibit to the opposition.   (Docket Entry # 21-1).

three "Separate Defenses."  (Docket Entry # 20).  On February
17, 2017, defendant filed his summary judgment motion requesting
dismissal of the amended complaint with prejudice because
plaintiff "fails to allege an injury that is both concrete and
particularized."  (Docket Entry # 21).  On March 11, 2017,
plaintiff filed an opposition to defendant's motion for summary
judgment arguing that Mills felt "confused and threatened by
Defendant's letters" which is "in fact a concrete and
particularized injury directly related to Defendant's
activities."  (Docket Entry # 23).

                        STANDARD OF REVIEW

     Summary judgment is designed "'to pierce the boilerplate of
the pleadings and assay the parties' proof in order to determine
whether trial is actually required.'"  Tobin v. Fed. Express
Corp., 775 F.3d 448, 450 (1st Cir. 2014) (quoting Wynne v. Tufts
Univ. School of Med., 976 F.2d 791, 794 (1st Cir. 1992)).  It is
appropriate "if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed.R.Civ.P. 56(a) ("Rule 56").
It is inappropriate "if the record is sufficiently open-ended to
permit a rational fact finder to resolve a material factual
dispute in favor of either side."  Pierce v. Cotuit Fire Dist.,
741 F.3d 295, 301 (1st Cir. 2014).

                                3

"Genuine issues of fact are those that a fact finder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014) (quoting Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011)).  In the context of the FDCPA and the statute's adherence to the unsophisticated consumer standard, "[a]t least three decisions" in this district note "that the determination of whether a collection letter violates the FDCPA is a question of law." In re Murray, 552 B.R. 1, 5 (Bankr. D. Mass. 2016) (citing Berger v. Northland Group Inc., 886 F.Supp. 2d 59, 62 (D. Mass. 2012)).  In the context of an FDCPA claim under section 1692e, the court in Murray explains that, "when a letter sends mixed signals or is inherently confusing, determining whether the unsophisticated consumer would be misled might require fact-finding, but when the letter is not contradictory or confusing, the issue of whether there was an FDCPA violation is a question of law." In re Murray, 552 B.R. at 5).  This court adheres to the construct in Murray, which allows a court to deny summary judgment when presented with genuinely disputed material facts. See also Waters v. J.C. Christensen & Associates, Inc., Civil Action No. 08-11795-NG, 2011 WL 1344452, at *4, 10 n.17 (D. Mass. Mar. 4, 2011), report

4

and recommendation adopted, 2011 WL 1344544 (D. Mass. Mar. 22, 2011).

Overall, the evidence is viewed "in the light most favorable to the non-moving party" and "all reasonable inferences" are drawn in his favor.  Ahmed v. Johnson, 752 F.3d 490, 495 (1st Cir. 2014).  In reviewing a summary judgment motion, a court may examine "all of the record materials on file," Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014), "including depositions, documents, electronically stored information, affidavits or declarations . . . or other material."  Fed.R.Civ.P. 56(c)(1); see Fed.R.Civ.P. 56(c)(3); Ahmed v. Johnson, 752 F.3d at 495.  Pursuant to Rule 56(c)(3), the documents attached to the complaint are part of the summary judgment record.

"Unsupported allegations and speculation do not demonstrate either entitlement to summary judgment or the existence of a genuine issue of material fact sufficient to defeat summary judgment."  Rivera-Colon v. Mills, 635 F.3d 9, 12 (1st Cir. 2011); see Serra v. Quantum Servicing, Corp., 747 F.3d 37, 40 (1st Cir. 2014) ("allegations of a merely speculative or conclusory nature are rightly disregarded").  Adhering to this framework, the record sets out the following facts.

## FACTUAL BACKGROUND

Between December 1, 2012 and December 31, 2014, defendant, a licensed attorney, primarily worked for a debt collection company, where he "regularly sent out collection letters as part of [his] employment/practice." (Docket Entry # 20-2, pp. 3, 7). More specifically, defendant worked for three entities: Accredited Collection Agency, Collection Solutions Inc., and United Credit Specialists or United Credit Solutions.[3] (Docket Entry ## 16-1, 16-2, 16-3, 16-4, 20-3). During this period, defendant acknowledges that 95% of his practice as an attorney was related to debt collection. (Docket Entry # 20-3, pp. 4, 9).

From December 1, 2012 to August 10, 2016, defendant was employed as an in-house attorney at United Credit Specialists ("UCS"). (Docket Entry # 20-3, pp. 4, 9). UCS was engaged in the collection of debts and was retained by clients "MY NEXT PAYDAY" and "MYPAYDAYADVANCE."[4] (Docket Entry ## 20-3, 16-1, 16-2).

On September 5, 2014, defendant mailed Mills a letter ("the first letter") on behalf of "MY NEXT PAYDAY" in an attempt to

---

[3]  On January 5, 2017, defendant represented that United Credit Specialists is no longer an operating business. (Docket Entry # 20-3, pp. 3, 9, 10). Defendant signed the letters that provide the basis of the FDCPA claims as the attorney for United Credit Specialists. The dates of all four letters are in 2014. (Docket Entry ## 16-1, 16-2, 16-3, 16-4).
[4]  "MY NEXT PAYDAY" and "MYPAYDAYADVANCE" are collectively referred to as "clients" of UCS and defendant.

collect an alleged debt ("the debt") in the amount of $870.00.[5]
(Docket Entry # 16-1).  In the letter, defendant identifies
himself as "the in-house lawyer for [UCS], who has been retained
by [MY NEXT PAYDAY] to collect an outstanding debt."  (Docket
Entry # 16-1).  The letter notifies Mills that defendant's
office had left telephone messages and sent numerous letters in
relation to the debt and that Mills had failed to reply.
(Docket Entry # 16-1).  The letter also admonishes Mills that it
is the "final pre-litigation letter" and that defendant is
"requesting that payment be made to [UCS] or myself for the full
amount within 10 days of receipt of this letter.  If you contact
us upon receipt of this letter, my client will agree to settle
for a one time lump sum, if paid within 5 days of your call."
(Docket Entry # 16-1).  The letter then stated that:

> If payment is not received within 10 days of receipt of
> this letter, my client will file suit for the full amount.
> Such a suit, in addition to the amount due, will also seek
> fees for the services of UCS, as well as the costs for
> filing suit . . . The next piece of correspondence you will
> receive on this account will be a Summons and Complaint.

(Docket Entry # 16-1).  The letter also contained the following
language underneath defendant's signature:

> Unless you notify us within 30 days after receiving this
> notice that you dispute the validity of the debt or any
> portion of it, this office will assume the debt is valid.
> If you notify this office within 30 days from receiving

---

[5]  Defendant denies possessing any document relating to the debts
allegedly owed by plaintiff, stating that they are "in the
possession of My Next Pay Day."  (Docket Entry # 20-1, p. 7).

this notice[,] this office will obtain verification of the
debt or copy of Judgement[sic] against you and mail you a
copy of such.  If you request this office in writing within
30 days after receiving this notice, this office will
provide you with the name and address of the original
creditor, if it is different than the current creditor.

(Docket Entry ## 16-1, 16-2, 16-3, 16-4)

     On September 10, 2014, defendant mailed Mills a second

letter ("the second letter"), identical to the first letter,

except that it was on behalf of "MYPAYDAYADVANCE" for the debt

of $710.00.  (Docket Entry # 16-2).  On November 28, 2014,

defendant sent a third letter to Mills ("the third letter"),

which was identical to the two previous letters and sent on

behalf of "MYPAYDAYADVANCE" for the debt of $710.00.  (Docket

Entry # 16-3).  On December 5, 2014, defendant sent a fourth

letter ("the fourth letter") to Mills.  This letter mirrored the

three previous letters and was sent on behalf of "MY NEXT

PAYDAY."  (Docket Entry # 16-4).  In sum, defendant sent four

letters from September to December 2014, the first and the

fourth letters were sent on behalf of "MY NEXT PAYDAY," and the

second letter and third letters were sent on behalf of

"MYPAYDAYADVANCE."  Each letter from the corresponding client

was the same.

     At no point in time did Mills contact defendant or his

clients "MY NEXT PAYDAY" and "MYPAYDAYADVANCE."  (Docket Entry #

20-1).  Mills did not make a payment on the debt.  (Docket Entry

8

# 20-1 pp. 3, 7).  In addition, neither defendant nor his
clients filed a lawsuit against Mills.  (Docket Entry # 20-1 pp.
3, 7).  Mills also did not receive a summons and complaint
relating to the debt, as was stated in the letters.

Defendant asserts there was no communication between
himself and Mills outside the four letters sent to plaintiff.
(Docket Entry # 20-1).  Defendant also maintains that none of
the letters were sent by UCS (Docket Entry # 20-1), even though
defendant states in the letters that he was acting within the
scope of his job as in-house counsel for UCS.  (Docket Entry #
16-1).

I.  <u>Plaintiff's Summary Judgment Motion</u>

Plaintiff seeks summary judgment on all counts:  Count One,
a violation of section 1692g; Count Two, a violation of section
1692e; and Count Three, a violation of section 1692f.  (Docket
Entry # 20).  Plaintiff also refutes the three defenses raised
by defendant.

Construing defendant's memorandum in support of his summary
judgment motion as also opposing plaintiff's summary judgment
motion, defendant contends that plaintiff "fail[ed] to assert a
concrete and particularized injury that is related to
[d]efendant's activities."  (Docket Entry # 21, p. 3).  For
reasons explained in Roman numeral II, plaintiff sufficiently
establishes Article III standing.

A.   <u>Section 1692g</u>

In seeking summary judgment on Count One, plaintiff submits
that he proved all three elements of an FDCPA violation,
including a violation of section 1692g.  Plaintiff argues that
defendant failed to send a "requisite debt validation notice
within 5-days of [d]efendant's initial communication with
[p]laintiff."  (Docket Entry # 20, p. 5).  Specifically,
plaintiff asserts that defendant did not comply with section
1692g(a)(4), which requires the debt collector to inform the
debtor[6] that, if he seeks to dispute the debt, he must do so in
writing.  15 U.S.C. § 1692g.  Plaintiff additionally argues
that, even if defendant had included the requisite language in
section 1692g(a)(4), the letters' demand for payment in ten days
overshadowed the section 1692(a)(4) notice in the letters of 30-
day right to dispute the debt in violation of section 1692g(b).

To establish an FDCPA claim, the burden falls on the
plaintiff to prove that:  "(1) she was the object of collection
activity arising from consumer debt, (2) defendants are debt
collectors as defined by the FDCPA, and (3) defendants have
engaged in an act or omission prohibited by the FDCPA."  <u>Som v.
Daniels L. Offices, P.C.</u>, 573 F.Supp. 2d 349, 356 (D. Mass.
2008).  A "debt collector" is defined in 15 U.S.C. § 1692(a):

---

[6]  The statute uses the term "consumer" rather than debtor.  15
U.S.C. § 1692g(a).

> as any person who uses any instrumentality of interstate
> commerce or the mails in any business the principal purpose
> of which is the collection of any debts, or who regularly
> collects or attempts to collect, directly or indirectly,
> debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a.

With respect to section 1692g, plaintiff correctly recognizes that the statute requires a debt collector to send a detailed validation notice to the debtor that includes the following information:

> a statement that if the consumer notifies the debt
> collector in *writing* within the thirty-day period that the
> debt, or any portion thereof, is disputed, the debt
> collector will obtain verification of the debt or a copy of
> a judgment against the consumer and a copy of such
> verification or judgment will be mailed to the consumer by
> the debt collector.

15 U.S.C. § 1692g(a)(4) (emphasis added).  In determining whether a validation notice violates the FDCPA, "courts look to whether the objective 'least sophisticated debtor' would find the notice improperly threatening or misleading."[7] Pollard v. Law Office of Mandy L. Spaulding, 967 F.Supp. 2d 470, 475 (D. Mass. 2013).  This standard is "an objective one, which preserves an element of reasonableness." LaTour v. Lustig,

---

[7]  Courts in this district also use an objective standard of "the 'least sophisticated consumer.'"  See Sullivan v Credit Control Servs. Inc., Civil Action No. 09-40220-FDS, 2010 WL 4183801 at *3 (D. Mass. Sep. 30, 2010).  For present purposes, any difference in the standard is immaterial inasmuch as it would not alter the recommendation on the summary judgment motions.

Glaser & Wilson, PC., 2017 WL 1190370, at *2 (D. Mass. Mar. 29, 2017) (citing Pollard, 766 F.3d at 104).

In this case, neither party disputes that Mills was subjected to collection activities arising from a consumer debt.[8] The parties also do not dispute that defendant is a debt collector as defined in 15 U.S.C. § 1692a.[9]  Plaintiff therefore satisfies the first two elements of an FDCPA claim with respect to all three claims in this action, including the section 1692g claim.

Turning to the third element, plaintiff maintains that defendant engaged in a prohibited act by violating section 1692g.  Specifically, defendant failed to send an adequate section 1692g validation notice by omitting the language that Mills must notify the debt collector, i.e., USC, "in writing" that she disputes the debt.  Simply stated, plaintiff contends that the letters violate section 1692g(a)(4) because they did not advise Mills "that a notification of dispute would have to

---

[8]  The amended complaint alleges that defendant sent plaintiff letters "in an attempt to collect consumer debts . . .." (Docket Entry # 16, p. 4).  Defendant admits this allegation in the answer.  (Docket Entry # 17, p. 2).

[9]  In the amended complaint, plaintiff alleges in paragraph four that "[d]efendant regularly operates as a third-party debt collector and is a 'debt collector' as defined by 15 U.S.C. 1692a." (Docket Entry # 16 p. 2).  In the answer to the amended complaint, defendant "stipulates as to [p]laintiff's assertion" made in paragraph four.  (Docket Entry # 17, ¶ 4).  Defendant also admits that 95% of his practice was debt collection. (Docket Entry # 20-3, pp. 4, 9).

be 'in writing' that the debt is disputed." (Docket Entry # 20, p. 6).

Here, as previously stated, the letters uniformly state that:

> Unless you notify us *within 30 days* after receiving this notice *that you dispute the validity of the debt* or any portion of it, this office will assume the debt is valid. If you notify this office within 30 days from receiving this notice[,] this office will obtain verification of the debt or copy of Judgement[sic] against you and mail you a copy of such. If you request this office *in writing within 30 days* after receiving this notice, this office will provide you with the name and address of the original creditor, if it is different than the current creditor.

(Docket Entry ## 16-1, 16-2, 16-3, 16-4) (emphasis added). It is true that the language does not directly link the "in writing" to a dispute of the debt. On the other hand, the "in writing language" appears in the same three sentence paragraph, and all the notifications in the paragraph contain the same time frame, i.e., 30 days. While it is a close question, applying the least sophisticated consumer standard, summary judgment in plaintiff's favor on the claim that defendant violated the notice required under section 1692g(a)(4) is not warranted.

Plaintiff additionally submits that the letters violated section 1692g because the collection activities disclosed in each letter overshadowed the required notice that the debtor, Mills, had 30 days to dispute the debt. Plaintiff maintains that the letters were confusing because they included both the

information that the "client will file suit" if payment is not
received in ten days and the information that "this office will
assume the debt is valid" unless "you notify us within 30 days"
that you dispute the debt.  (Docket Entry ## 16-1, 16-2, 16-3,
16-4).  Thus, in the letters, defendant warns Mills that a suit
will be filed against her if she does not pay the debt within
ten days, while simultaneously informing plaintiff that she may
dispute the debt within 30 days.

Section 1692g states that, "Any collection activities and
communication during the 30-day period may not overshadow or be
inconsistent with the disclosure of the consumer's right to
dispute the debt or request the name and address of the original
creditor."  15 U.S.C. § 1692g(b).  A validation notice is
"overshadowing or contradictory if it fails to convey the
validation information clearly and effectively and thereby makes
the least sophisticated consumer uncertain as to her rights."
Savino v. Computer Credit, Inc., 164 F.3d 81, 85 (2d Cir. 1998).
Debt collectors are not prohibited from demanding immediate
payment, although "if the debt collector chooses to demand
immediate payment, it must pair that demand with transitional
language informing the consumer that the demand does not
override the consumer's right to dispute the debt and seek
verification."  Pollard v. Law Office of Mandy L. Spaulding, 967

F.Supp. 2d at 477.  Examples of appropriate transitional

language include the following:

> Although we have requested that you make immediate payment
> or provide a valid reason for nonpayment, you still have
> the right to make a written request, within thirty days of
> your receipt of this notice, for more information about the
> debt.  Your rights are described on the reverse side of
> this notice.

> Our demand for immediate payment does not eliminate your
> right to dispute this debt within thirty days of receipt of
> this notice.  If you choose to do so, we are required by
> law to cease our collection efforts until we have mailed
> that information to you.  Your rights are described on the
> reverse side of this notice.

Savino v. Computer Credit, Inc., 164 F.3d at 86; Pollard v. Law

Office of Mandy L. Spaulding, 967 F.Supp. 2d at 477 n.5.  As

summarized in Pollard, inadequate transition language occurs in

"communications that, while informing the debtor of her right to

dispute the debt within thirty days, simultaneously demand[]

payment immediately or within a time frame shorter than the

thirty-day validation period."  Pollard v. Law Office of Mandy

L. Spaulding, 967 F.Supp. 2d at 475 (collecting cases).

Here, the body of the letters sets out and emphasizes that,

if payment is not received in ten days, the "client will file

suit . . .."  The next sentence states that the client will seek

legal fees and the sentence thereafter repeats that defendant,

or another attorney, "will file suit."  The paragraph concludes

with the statement that, "The next piece of correspondence you

will receive . . . will be a Summons and Complaint."  (Docket

15

Entry ## 16-1, 16-2, 16-3, 16-4).  It is only below defendant's signature that the language regarding the ability to dispute the debt appears.  The letter is also from an attorney, which reinforces the language that the client "will file suit" unless payment is received in ten days.  See id. at 476; see also LaTour v. Lustig, Glaser & Wilson, PC., 2017 WL 1190370, at *2 (D. Mass. Mar. 29, 2017) ("attorney debt collectors warrant closer scrutiny due to the inference of authority and experience") (citing Pollard, 766 F.3d at 106).  Consequently, defendant failed to distinguish plaintiff's statutory right to dispute the debt from defendant's rights to immediate payment thereby violating section 1692g.  Summary judgment in plaintiff's favor as to this portion of the section 1692g(b) claim in Count One is therefore appropriate.[10]

B.   Section 1692e

In Count Two, plaintiff argues that defendant violated sections 1692e(5) and (10) by using "false or misleading representations."  (Docket Entry # 20, p. 7).  Specifically, the letters purportedly misrepresented or falsely stated that defendant's clients "will file suit for the full amount" if USC did not receive a payment within ten days, and that "[t]he next

---

[10]  Because plaintiff is entitled to summary judgment on the above section 1692(g)(b) claim, plaintiff shall advise this court within 14 days whether he wishes to proceed to trial in the section 1692g(a)(4) claim in Count One.

piece of correspondence . . . will be a Summons and Complaint."
(Docket Entry # 20).  Plaintiff asserts that these statements
are misrepresentations because Mills did not make a payment to
either "MY NEXT PAYDAY" or "MYPAYDAYADVANCE" yet the next
correspondence she received from defendant on behalf of these
entities was not a summons and complaint, but instead letters
three and four.

     The FDCPA is a strict liability statute that prohibits
"false, deceptive, or misleading representation or means in
connection with the collection of any debt."  Harrington v. CACV
of Colorado, LLC, 508 F.Supp. 2d 128, 132 (D. Mass. 2007); 15
U.S.C. § 1692e.  Section 1692e provides 16 examples of false,
deceptive, or misleading conduct.  15 U.S.C. § 1692e.  The list
is not exhaustive.  See Lannan v. Levy & White, 186 F.Supp. 3d
77, 91 (D.Mass. 2016).  Subparagraphs (5) and (10) prohibit:

> (5) The threat to take any action that cannot legally be
> taken or that is not intended to be taken . . . [and] (10)
> The use of any false representation or deceptive means to
> collect or attempt to collect any debt or to obtain
> information concerning a consumer.

15 U.S.C. § 1692e.  As before, the least sophisticated consumer
standard applies.

     As previously determined, Mills was "the object of
collection activity arising from consumer debt" and defendant is
a debt collector as defined by 15 U.S.C. § 1692a.  Som v.
Daniels L. Offices, P.C., 573 F.Supp. 2d at 356.  With respect

17

to the alleged section 1692e(5) violation, the First Circuit has not addressed the standard used for 1692e(5)'s prohibition on "threat[s] to take any action . . . that is not intended to be taken." The court in In re Cambron, however, explained that in the Eleventh Circuit "the existence of the intent to perform the action threatened is a question of fact, and threatening action with no intent to take it is a per se violation." In re Cambron, 379 B.R. 371, 375 (M.D. Ala. 2007); see Harrington v. CACV of Colorado, LLC, 508 F.Supp. 2d 128, 136–37 (D. Mass. 2007).

Here, it is undisputed that defendant sent four letters from September 5 to December 5, 2014, and that each letter claimed to be a "final pre-litigation letter" that assured litigation if payment was not received within ten days. With respect to letters one and two, it is undisputed that neither defendant nor his clients filed suit in ten days after payment was not received before defendant sent letters three and four. The fact that, instead of filing suit when payment was not received in ten days, as represented in letters one and two, defendant sent letters three and four with the exact same threat to file suit, evidences that defendant did not intend to file suit in ten days, as stated in letters three and four.

With plaintiff having identified the foregoing evidence that neither defendant nor his clients intended to file suit if

18

payment was not received in ten days, it was incumbent upon defendant to provide evidence to the contrary in order to create a disputed fact on this material issue.  Examining the summary judgment record in its entirety, there is no such evidence. Accordingly, the statements made in letters three and four to file suit if payment is not received in ten days were threats to take action "that is not intended to be taken" within the meaning of section 1692e(5).  The subsequent conduct that defendant did not file suit and that suit was not filed until approximately one year after defendant sent the first letter also shows that defendant made a threat to file suit in all four letters that was "not intended to be taken" at the time of each letter in violation of section 1692e(5).

Turning to the section 1692e(10) claim, plaintiff uses the same evidence to support the claim as he does to support the 1692e(5) claim.  A section 1692e(10) violation "may occur when a collection document contains objectively false statements." Sullivan v. Credit Control Services, Inc., 745 F.Supp. 2d 2, 11 (D. Mass. 2010).

On September 5, 2014, defendant, on behalf of "MY NEXT PAYDAY," stated "Please consider this to be my final pre-litigation letter."  (Docket Entry # 16-1).  The letter, however, was not the final pre-litigation letter on behalf of "MY NEXT PAYDAY."  On September 10, 2014, defendant sent a

letter on behalf of "MYPAYDAYADVANCE," also claiming to be a final pre-litigation letter, which it was not.  On its face, the first and second letters falsely represented they were final pre-litigation letters when, in fact, the subsequent pre-litigation letters Mills received established that the first and second letters were not the final pre-litigation letters.  These objectively false statements in the first and second letters thereby warrant summary judgment with respect to the section 1692e(10) claim in Count Two.

C.  Section 1692f

     With respect to Count Three, plaintiff argues that defendant violated section 1692f by stating that, "his client 'will file suit for the full amount' if [plaintiff] did not make payment within 10 days of his letters," and that, "[t]he next piece of correspondence [plaintiff] will receive on this account will be a Summons and Complaint."  (Docket Entry # 20, p. 11) (Docket Entry # 16-1).  Plaintiff maintains that this language, coupled with defendant's failure to file suit on this account, supports plaintiff's contention that the letters were "designed to mislead and coerce [Mills] into paying an alleged debt" and therefore constitute an "unfair or unconscionable means to collect or attempt to collect [a] debt" within the meaning of section 1692f.  (Docket Entry # 20, p. 11).  Plaintiff does not

cite any particular subsection of section 1692f as the basis for the claim.

Similar to section 1692e, section 1692f provides a nonexauhstive list of proscribed conduct.  The section prohibits behavior that falls within the language of "unfair or unconscionable means."  15 U.S.C. § 1692f.  Section 1692f "generally applies where the conduct is similar to that prohibited by the FDCPA *but not* covered by any other section therein."  Davis v. Diversified Consultants, Inc., 36 F.Supp. 3d 217, 228 (D. Mass. 2014) (emphasis added).  Although the statute does not define either unfair or unconscionable, "courts have considered an action unfair where it is 'marked by injustice, partiality, or deception,' and unconscionable when it is 'unscrupulous,' 'show[s] no regard for conscience,' or 'affront[s] the sense of justice, decency, or reasonableness.'" Sutton v. Fin. Recovery Services, Inc., 121 F.Supp. 3d 309, 314 (E.D.N.Y. 2015) (quoting LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir. 2010)).  Evaluating the language in the letters from the perspective of the least sophisticated consumer, an objective standard applies.  See Pollard, 766 F.3d at 103; accord Turner v. J.V.D.B. & Associates, Inc., 330 F.3d 991, 996 (7th Cir. 2003) (section 1692f "violation hinges on objective factors that relate to a consumer who receives the demand for payment").

As stated above, section 1692f broadly prohibits unfair and unconscionable conduct, "where the conduct is similar to that prohibited by the FDCPA *but not* covered by any other section therein." Davis v. Diversified Consultants, Inc., 36 F.Supp. 3d at 228 (emphasis added); see Rush v. Portfolio Recovery Associates LLC, 977 F.Supp. 2d 414, 432 (D.N.J. 2013) (section 1692f is "a catch-all provision for conduct that is unfair but is not specifically identified in any other section of the FDCPA"); Fiorenzano v. LVNV Funding, LLC, 2012 WL 2562415, at *5 (D.R.I. June 29, 2012) ("'alleged violation under § 1692f will be deficient if it does not identify misconduct beyond that which [p]laintiffs assert violate other provisions of the FDCPA'") (quoting Foti v. NCO Fin. Sys., Inc., 424 F.Supp. 2d 643, 667 (S.D.N.Y. 2006), in parenthetical). A section 1692f violation, therefore, may not rely on conduct specifically prohibited in other sections of the statute, i.e., those stated in section 1692e's false or misleading representations. See Rush v. Portfolio Recovery Associates LLC, 977 F.Supp. 2d at 432 (section "1692f cannot be the basis of a separate claim for complained of conduct that is already explicitly addressed by other sections of the FDCPA"); Fiorenzano v. LVNV Funding, LLC, 2012 WL 2562415, at *5.

Here, plaintiff does not allege a violation of any of the specific examples described by section 1692f. Instead,

plaintiff argues that the alleged false representations
exemplify a general prohibition of the use of "unfair or
unconscionable means." (Docket Entry # 20, p. 11). Indeed, the
basis for plaintiff's 1692f claim is redundant of the 1692e
claim. Plaintiff relies on the same conduct and does not offer
any additional or different evidence to support the section
1692f claim that defendant was unfair and/or unconscionable.
Thus, in presenting the section 1692f violation, plaintiff
relies on the same portion of the four letters to establish the
section 1692f violation. Because section 1692f does not
encompass conduct explicitly prohibited by any other section of
the FDCPA, including section 1692e, summary judgment in
plaintiff's favor is not appropriate as to Count Three.[11]
Because of this remaining count, it is premature to address
plaintiff's arguments that he is entitled to $1,000 in statutory
damages, $59.95 in cash, and $10,865.50 in attorney's fees.
Plaintiff may renew this portion of the summary judgment motion,
notwithstanding the expiration of the February 1, 2017 deadline
to file summary judgments, in the event Count Three and the

---

[11] In seeking summary judgment on Count Three, defendant does
not raise the above noted argument. The count therefore remains
in this action. Plaintiff shall advise this court within 14
days whether plaintiff wishes to proceed with Count Three or
voluntarily dismiss the count.

section 1692g(a)(4) claim in Count One are dismissed or

otherwise resolved prior to a trial.

D.  Separate Defenses

Plaintiff also seeks summary judgment on each defense in

defendant's answer to the amended complaint.  Plaintiff asserts

that, "Summary judgment is appropriate as [d]efendant's

affirmative defenses are boilerplate and legally deficient."

(Docket Entry # 20).  As previously noted, the defenses are:

> 1. That any injury sustained by Plaintiff was a result of
> activities that were not under the control of the
> Defendant.
> 2. Plaintiff's Attorney has failed to join necessary
> parties to this action.
> 3. Plaintiff's suit against the Defendant should be
> dismissed for failure to prove actual injury pursuant to
> [Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1556 (2016)].

(Docket Entry # 17, p. 3).

In response to plaintiff identifying the deficiencies of

defendant's defense regarding the lack of injuries as a result

of activities under defendant's control and the failure to join

a necessary party, defendant fails to respond.  He neither

identifies facts nor presents a legal argument as to the

viability of these two defenses.  As the summary judgment target

with the underlying burden of proof, it is incumbent upon

defendant to identify such evidence.  See Kenney v. Floyd, 700

F.3d 604, 608 (1st Cir. 2012) (for "'issues on which the summary

judgment target bears the ultimate burden of proof, she cannot

rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute'") .  These two defenses are therefore subject to summary judgment in plaintiff's favor.

Alternatively, defendant waives any argument that would preclude summary judgment on these two defenses.  Logan v. Gelb, 790 F.3d 65, 70 (1st Cir. 2015); Merrimon v. Unum Life Ins. Co. of America, 758 F.3d 46, 57 (1st Cir. 2014) (even issue raised in "'complaint but ignored at summary judgment may be deemed waived'" and if "'party fails to assert a legal reason why summary judgment should not be granted, that ground is waived'"); see also Watson v. Trans Union LLC, 223 Fed.Appx. 5, 2007 WL 613724, at *2 (1st Cir. Mar. 1, 2007) (noting that "while pro se litigants are held to a less stringent standard, they are not immune from requirements" of making at least some attempt at legal argument).

With respect to the third defense, which raises the issue of subject matter jurisdiction, it is addressed below in Roman numeral II.

II.  Defendant's Summary Judgment Motion

Defendant moves for summary judgment due to the absence of Article III standing.  (Docket Entry # 21).  Citing Spokeo, Inc. v. Robins 136 S.Ct. 1540 (2016), defendant submits that plaintiff "fails to assert a concrete and particularized injury

that is related to Defendant's activities." (Docket Entry # 21).  Defendant maintains that, "[p]laintiff must allege an injury that is both concrete and particularized" and that "Article III standing requires a concrete injury even in the context of a statutory violation." (Docket Entry # 21). Plaintiff points out that the complaint seeks statutory damages of $1,000 under 15 U.S.C. § 1692k(2).  Plaintiff also contends that Spokeo does not "support Defendant's position" and that she "adequately alleged an injury-in-fact as required by Article III." (Docket Entry # 23).

Where, as here, the defendant brings "a motion for summary judgment challenging the plaintiff's standing, the Supreme Court has placed the burden to demonstrate standing on the plaintiff by requiring 'specific facts.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); accord Fiedler v. Ocean Properties, Ltd., 683 F.Supp. 2d 57, 71 (D. Me. 2010).  A plaintiff faced with a summary judgment motion based on standing cannot rely on allegations in a complaint.  See Lujan v. Defenders of Wildlife, 504 U.S. at 561.  When a party admits to facts in a complaint, however, this court may consider the fact as an admission for purposes of summary judgment.  See, e.g., Pruco Life Ins. Co. v. Wilmington Trust Co., 721 F.3d 1, 11 (1st Cir. 2013) (admission in answer by non-moving defendant in summary judgment was binding and provided basis to find no genuine dispute of material

fact); Fed.R.Civ.P. 56(c)(3).  An allegation in a complaint is admitted "when a responsive pleading is required and the allegation is not denied."  Fed.R.Civ.P. 8(b)(6).

To support Article III standing, plaintiff relies on a statement in the amended complaint that Mills was "confused and threatened by Defendant's letters" and "retained counsel . . .." (Docket Entry # 16, ¶ 12) (Docket Entry # 23).  The answer "neither admits nor denies the allegation" in this paragraph. (Docket Entry # 17, ¶ 12).  "Under the Fed.R.Civ.P. 8(b) pleading requirements, Defendant's failure to deny the fact alleged" in the complaint "or state that it was without sufficient knowledge or information to answer, constitutes an admission."  Trustees of IBEW Loc. No. 7 Pension Fund v. DAW MAC Serv., Corp., Civil Action No. 13-30029-MAP, 2014 WL 4656874, at *3 (D. Mass. Sept. 15, 2014) (deeming statement in complaint admitted for purposes of summary judgment when answer stated "that it 'neither admits nor denies the allegations'"). Accordingly, Mills experienced confusion and felt threatened by defendant's four letters.

As noted above, defendant relies on Spokeo, Inc. v. Robins, 136 S.Ct. 1540 (2016), a case addressing an intervenor's Article III standing in a Fair Credit Reporting Act case.  As stated in Spokeo, Article III standing requires the plaintiff to show that he has "(1) suffered an injury in fact, (2) that is fairly

27

traceable to the challenged conduct of the defendant, and (3)
that is likely to be redressed by a favorable judicial
decision." Id. at 1547. Based on the record, plaintiff
satisfies the second and third requirements.

Turning to the first requirement, an "injury in fact"
requires the plaintiff to show that the plaintiff "suffered 'an
invasion of a legally protected interest' that is 'concrete and
particularized' and 'actual or imminent, not conjectural or
hypothetical.'" Id. at 1548. The imminence requirement
"ensure[s] that the alleged injury is not too speculative for
Article III purposes." Clapper v. Amnesty Int'l USA, 133 S.Ct.
1138, 1147 (2013) (internal quotation marks omitted). A
"'threatened injury must be *certainly impending* to constitute
injury in fact, and allegations of possible future injury are
not sufficient.'" Id.; Matherly v. Andrews, Civil Action No.
16-64732017, WL 2467088, at *9 (4th Cir. June 8, 2017). A
particularized injury is an injury that "'affect[s] the
plaintiff in a personal and individual way.'" Id. "A
'concrete' injury must be 'de facto'" in the sense that is
"'real,' and not 'abstract.'" Id. Intangible and tangible
injuries may constitute concrete injuries. Id. at 1549. With
respect to the former, "history and the judgment of Congress
play important roles" in determining if an intangible harm is
concrete. Id. Congress may therefore "'elevat[e] to the status

28

of legally cognizable injuries concrete, de facto injuries that
were previously inadequate in law.'" Spokeo, Inc. v. Robins,
136 S.Ct. at 1549 (quoting Lujan v Defenders of Wildlife, 504
U.S. at 578).

As summarized by the Second Circuit, "we understand Spokeo,
and the cases cited therein, to instruct that an alleged
procedural violation can by itself manifest concrete injury
where Congress conferred the procedural right to protect a
plaintiff's concrete interests and where the procedural
violation presents a "risk of real harm" to that concrete
interest." Strubel v. Comenity Bank, 842 F.3d 181, 190 (2d Cir.
2016) (quoting Spokeo, Inc. v. Robins, 136 S.Ct. at 1549).
"[E]ven where Congress has accorded procedural rights to protect
a concrete interest," however, "a plaintiff may fail to
demonstrate concrete injury where violation of the procedure at
issue presents *no material risk of harm* to that underlying
interest." Id. (citing Spokeo, 136 S. Ct. at 1549) (emphasis
added).

Here, the threatened injury of filing suit, as stated in
the letters, prompted Mills to retain counsel.  Such threats
along with the confusion and resulting retention of counsel are
sufficiently distinct, palpable, and personal as opposed to
abstract or speculative.  See Lujan v. Defenders of Wildlife,

29

504 U.S. at 564-65; <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155 (1990).

In addition to the threatened injury and confusion Mills experienced, the section 1692e statutory violation plaintiff established presents "a risk of harm to [Mills'] concrete interest established by the FDCPA to be free of 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" <u>Girdler v. Convergent Outsourcing, Inc.</u>, Civil Action No. 15-13359-DJC, 2016 WL 7479541, at *3 (D. Mass. Dec. 29, 2016) (quoting section 1692e and rejecting lack of standing argument). As a result, "this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA." <u>Id.</u> (quoting <u>Church v. Accretive Health, Inc.</u>, 654 Fed.Appx. 990, 994 (11th Cir. 2016) (unpublished). Plaintiff's viable section 1692e claim therefore establishes standing under Article III. <u>See id.</u> As aptly reasoned in an unpublished Eleventh Circuit decision, "'through the FDCPA, Congress has created a new right- the right to receive the required disclosures in communications governed by the FDCPA-and a new injury-not receiving such disclosures.'" <u>Id.</u> (quoting <u>Church v. Accretive Health, Inc.</u>, 654 Fed.Appx. 990, 994 (11th Cir. 2016)) (per curium); <u>see Jordan v. ER Sols., Inc.</u>, 900 F.Supp. 2d 1323, 1326 (S.D.Fla. 2012).

In sum, the existence of the threatened harm and confusion resulting in the retention of counsel as well as the concrete injury establishes an injury in fact.  Defendant's summary judgment motion based on a lack of standing therefore lacks merit.

Finally, this court recognizes that, although the complaint seeks attorney's fees, "reimbursement of the costs of litigation cannot alone support standing."[12]  Steel Co. v. Citizens for a Better Env., 523 U.S. 1 83, 108 (1998).  Thus, entitlement to an award of attorney's fees under 15 U.S.C. § 1692k or the "legal costs incurred" to respond to the "collection activity" (Docket Entry # 16, p. 4) does not establish standing.  See id. at 107 ("litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation: and "'interest in attorney's fees is . . . insufficient to create).

CONCLUSION

In accordance with the forgoing discussion, this court **RECOMMENDS**[13] that plaintiff's summary judgment motion (Docket

---

[12] A plaintiff is not required to show actual damages to establish a violation of the FDCPA.  Som v. Daniels L. Offices, P.C., 573 F.Supp. 2d at 356 (FDCPA "plaintiff need not show intentional conduct by the collector or actual damages").
[13]  Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the

Entry # 20) be **ALLOWED** with respect to Count Two and the section 1692g overshadowing claim in Count One; **DENIED** as to Count Three and the section 1692g(a)(4) claim in Count One;[14] and **DENIED** without prejudice as to the request for statutory damages, costs, and attorney's fees.  This court further **RECOMMENDS**[15] that defendant's motion for summary judgment (Docket Entry # 21) be **DENIED.**

_/s/ Marianne B. Bowler_
**MARIANNE B. BOWLER**
United States Magistrate Judge

Report and Recommendation to which objection is made and the basis for any such objection.  See Rule 72(b), Fed.R.Civ.P.  Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.
[14]  See footnotes ten and 11.
[15]  See footnote 13.